BAKER ET AL., APPELLANTS, *v.* KOCH ET AL., APPELLEES.[*]

(No. 6037—Decided July 29, 1960.)

*Mr. George E. Tyack* and *Mr. Robert L. Herron,* for appellants.

*Messrs. Maugan, Vacca & Braun,* for appellees.

CRAWFORD, J. This cause is before us in the form of an appeal on questions of law from a judgment for the defendants, appellees herein, in a suit to quiet title to a strip of ground lying between the premises owned by the respective parties.

[*]Motion to certify the record overruled, January 25, 1961.

The essential facts are not in dispute. Plaintiffs, appellants herein, challenge the reasoning of the Court of. Common Pleas resulting in the judgment for defendants.

A number of years ago two large adjoining lots numbered 5 and 6 were laid out in a partition of the lands of Elizabeth Altman, deceased, in the Court of Common Pleas of Franklin County, Ohio. It appears from the record before us that the parties agree that the plat containing these two lots was properly recorded, that the common owner conveyed lot 5 (which lies to the west) to defendants' predecessors in title, in 1928, and that he conveyed lot 6 (which lies immediately to the east) to plaintiffs' predecessor in title, in 1943.

In the conveyance of lot 5, the description names lot 5 with proper reference to the plat but contains also a description, by metes and bounds, which results in an encroachment by a few feet upon the west part of lot 6. Lot 6 is not mentioned either in this original deed from the common grantor or in any of the deeds in defendants' chain of title. The present suit is to quiet plaintiffs' title to this encroachment on lot 6.

Defendants argue that, by his act in purporting to describe lot 5 by metes and bounds and by causing corresponding surveyor's stakes or pins to be set on lot 6, the common grantor changed the lot line by adding the strip in question to lot 5 and subtracting it from lot 6. But, of course, a recorded plat cannot be changed by any such informal and indirect method.

Defendants further invoke the rule of strict construction against the grantor and in favor of the grantee in case of ambiguity. They also argue other principles, according to which they claim the metes-and-bounds description will prevail over the reference to lot 5 on the plat. But circumstances have intervened which prevent determination of the present controversy by these rules alone.

Defendants contend also, and the Court of Common Pleas agreed, that, inasmuch as the original grantor might have conveyed whatever he owned in such parcels and by such descriptions as he chose, he effectively conveyed whatever is included in the metes-and-bounds description, including the strip from the west part of lot 6 now in question. Hence, it is argued that he could not thereafter have conveyed to another that which he no longer owned.

Logical as this deduction may at first appear, such disposition of the present issue would leave out of account another feature of the case which is in our opinion determinative.

If, after the common grantor made his conveyance to the first grantee through whom defendants claim, the grantee had failed to record his deed at all, and if the plaintiffs had no actual knowledge of its existence, then plaintiffs' title to all of lot 6 would have been unaffected by that deed.

Such deed having in fact been recorded, the present issue turns upon the question whether the record of that deed containing the metes-and-bounds description affects plaintiffs' property—that is, whether they are bound by notice that the common grantor conveyed a portion of lot 6 even though that lot was never mentioned by number.

The applicable recording statute is Section 5301.25, Revised Code. But neither the briefs nor our own research have revealed any Ohio decision in such circumstances as are now before us. However, the applicable principles have been sufficiently defined to assist in answering the present question.

In the early case of *Blake* v. *Graham*, 6 Ohio St., 580, 584, the Supreme Court said:

" 'A purchaser of the legal title can not be affected by any latent equity of which he has not actual notice, or which does not appear on some deed necessary to the deduction of his title. 2 Sugden on Vendors, ch. 17, note 430.

"These rules rest on the obvious reason, that a searcher can be fairly supposed to be made acquainted with the contents of such deeds only as, in the process of tracing, link by link, his chain of title on the record, necessarily pass under his inspection."

In 45 American Jurisprudence, 474, Records and Recording Laws, Section 97, appears the following statement:

"To impute to a purchaser notice of an instrument out of the chain of title, because it was put on record, is wholly inconsistent with equitable principles generally * * *."

On page 493, Records and Recording Laws, Section 128, *ibid*, appears the following:

"Upon the principle that a prospective purchaser is under no obligation to examine the record of instruments not in the line of title to the property he contemplates purchasing, it is

held that the record of an instrument which is intended to affect the property, but which, because of defective or erroneous description, is not in the line of title, does not constructively put a subsequent purchaser on inquiry suggested by matters contained in the record itself, unless it is proved that he actually read the record. The reason for the rule is that he cannot be presumed to have read the instrument. Thus, where the recorded instrument appears by its description to relate to certain land, it is not constructive notice as to other land which it was intended to describe. Obviously, the question as to what sort of defects in the description will make the instrument appear to be not in line of title will depend on particular facts in connection with particular systems of recording. Generally speaking, however, the point may be illustrated by the difference between an instrument giving a wrong range or block number and one that merely omits the range or block number. Ordinarily, the first will not be in line of title, and there will be no occasion for the abstractor to look at the deed at all, since he is concerned with property in a different range. On the other hand, the mere omission of the range number, if county, township, and section number are correctly given, will indicate a probability that the instrument is in line of title, especially if there are no other ranges in the county with sections bearing the given section number.''

Applying these principles, if the original deed had contained no reference to lot 5, plaintiffs and their predecessors in title might well have been put upon inquiry. But inasmuch as lot 5 alone is mentioned, and lot 6 is not, it is difficult to see how they can be bound.

Surely, it is not incumbent upon a purchaser to examine the titles and the descriptions of the parcels surrounding his land if they are not in his chain of title and he has no actual notice that they may affect him.

The record reflects an earlier suit to quiet title in defendants' predecessors in title. Lot 5 only is mentioned in those proceedings, lot 6 is not. Neither were the plaintiffs nor any proper predecessors in their title made parties. Hence, no decree could be rendered affecting their title. 33 Ohio Jurisprudence, 928, Quieting Title, Section 120.

A certain quitclaim deed which appears in the record is sub-

ject to the same infirmities as is the original conveyance through which defendants claim.

Defendants assert title by adverse possession. We find no substantial evidence in support of that claim.

It is our conclusion that plaintiffs are the owners of the fee simple title to the disputed portion of lot 6 as that lot is delineated upon the recorded plat, and that none of the defendants has any right or title therein.

The judgment is reversed, the costs of this appeal are assessed against the defendants, and the cause is remanded for assessment of the costs in the Court of Common Pleas and the entering of judgment in accordance with this opinion.

*Judgment reversed.*

YOUNGER, P. J., and McLAUGHLIN, J., concur.

YOUNGER, P. J., of the Third Appellate District, McLAUGHLIN, J., of the Fifth Appellate District, and CRAWFORD, J., of the Second Appellate District, sitting by designation in the Tenth Appellate District.

(Decided September 6, 1960.)

ON APPLICATION for rehearing.

*Per Curiam.* We have read carefully the application of defendants for rehearing and their brief in support thereof.

The arguments and authorities therein contained have already been considered, and we find that we must disagree with the conclusions now urged by counsel.

The application is denied.

*Application denied.*

YOUNGER, P. J., McLAUGHLIN and CRAWFORD, JJ., concur.